**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM PASTERNAK, MARGARET LASKOWSKI for the estate of LEONARD LASKOWSKI, and CAROL MOHEDANO,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 07 C 2858** |
| **DENNIS R. RADEK and EDWARD A. RADEK, JR.,** | ) ) ) | |
| **Defendants.** | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

William Pasternak, Margaret Laskowski (for the estate of Leonard Laskowski), and Carol Mohedano brought this action against Dennis R. Radek and Edward A. Radek, Jr. pursuant to section 1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(e)(1), seeking to recover benefits due them under the health plan administered by their employer, Ready Metal Manufacturing Company. The parties agreed to settle plaintiffs' claims for $30,000, with a petition for attorney's fees to be submitted to the Court for adjudication.

Plaintiffs now seek $129,735 in attorney's fees and $2,603.97 in expenses pursuant to 29 U.S.C. § 1132(g)(1). For the reasons stated below, the Court awards plaintiffs $59,178.47 in attorney's fees and expenses.

**Background**

Plaintiffs allege the following facts. Until May 2005, plaintiffs worked for Ready Metal, a metal manufacturing company. While it was still operating, Ready Metal maintained a self-insured health plan for its employees administered through Blue Cross and Blue Shield of Illinois ("BCBS"). Plaintiffs and other plan participants had their share of the premiums deducted from each paycheck, to be paid to BCBS. On May 17, 2005, Ready Metal sent a notice to all of its employees, stating that the company had permanently ceased operations at its Chicago facility as of May 12, 2005. Ready Metal mailed an additional memorandum to its employees that day, informing them that the company was unable to continue to provide health insurance and had discontinued coverage as of May 12, 2005. The employees also received a copy of a May 13, 2005 agreement by which Ready Metal assigned its assets to a trustee, for the benefit of creditors.

The employees' final earning statement for the period ending May 15, 2005 included an adjustment to the medical plan deductions reflecting a credit to each employee for the insurance premiums withheld from their paychecks as far back as January 1, 2005. After receiving his statement, Mr. Pasternak requested a Certificate of Coverage from BCBS. The certificate he received stated that coverage began on January 1, 1999 and ended January 1, 2005. From January 1 to May 19, 2005, Ready Metal had continued to withhold healthcare premiums from the employees' paychecks but had not paid the money to Blue Cross. Only after Ready Metal ceased operations did its employees, including plaintiffs, discover that they had paid for four and a half months of health insurance coverage that they did not receive. The plaintiffs each had

2

incurred medical bills during the period in 2005 when they believed they had coverage. BCBS paid some of their 2005 claims but soon requested reimbursement from them and from providers it had paid, and it refused to pay outstanding claims.

In August 2005, the law firm of Krislov & Associates ("K & A") began receiving calls from former Ready Metal employees about their rights to vacation pay and medical expenses. Associate Elizabeth Neugent Dixon had primary day-to-day responsibility for the matter, under the supervision of senior partner Clinton Krislov. On May 22, 2007, K & A filed a complaint against defendants, the president and executive vice–president of Ready Metal, for breach of fiduciary duty under ERISA.

In response, defendants claimed that they had paid over far more to BCBS in 2005 than they had withheld from their employees' paychecks. They also asserted that they could not have anticipated either the collapse of Ready Metal or the cancellation of their employees' BCBS coverage as of January 1, 2005.

Following an unsuccessful settlement conference, plaintiffs researched additional claims against defendants. However, after the Court deferred their request to file an amended complaint and conducted a settlement conference on October 10, 2007, the parties arrived at a settlement. The settlement called for a payment of $30,000 to the plaintiffs to cover their medical bills in full and left plaintiffs' attorney's fees for the Court to determine.

## Discussion

**I.    Determination of whether fees should be awarded**

ERISA's fee-shifting statute provides that a district court may "allow a reasonable

attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Although, under this statute, "there is a 'modest presumption' in favor of awarding fees to the prevailing party . . . that presumption may be rebutted." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 673 (7th Cir. 2004) (quoting *Senese v. Chicago Area I.B. of T. Pension Fund*, 237 F.3d 819, 826 (7th Cir. 2001)).

The Court may apply either of two tests recognized by the Seventh Circuit to determine whether the prevailing party should be awarded attorney's fees and costs. *Quinn v. Blue Cross and Blue Shield Ass'n*, 161 F.3d 472, 478 (7th Cir. 1998). One test "looks to whether or not the losing party's position was 'substantially justified.'" *Id.* (citing *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 830 (7th Cir. 1984)). The other, multi-factor test considers: "1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions." *Id.* (citing *Filipowicz v. Am. Stores Benefit Plans Comm.*, 56 F.3d 807, 816 (7th Cir. 1995)).

Regardless of which test is used, the overall question is the same: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id.* (citing *Hooper v. Demco, Inc.*, 37 F.3d 287, 294 (7th Cir. 1994)). Indeed, the multi-factor test should be "used to structure or implement, rather than to contradict, the 'substantially justified' standard." *Lowe v. McGraw-Hill*

*Co., Inc.*, 361 F.3d 335, 339 (7th Cir. 2004).

Because the parties have structured their arguments around the multi-factor test, and because that test is more suitable in cases in which the prevailing party is the plaintiff, the Court will use the multi-factor test to guide its analysis.

### A.    Degree of culpability or bad faith

Plaintiffs argue that defendants demonstrated bad faith both in the substantive actions that were the object of the lawsuit (withholding employees' healthcare premiums from their paychecks and not paying the amounts over to BCBS) and in their litigating posture (asserting that they had paid more money to BCBS in 2005 than they had withheld, although they knew that the money they paid in 2005 was for 2004 coverage).

Defendants respond that they exhibited no bad faith during the litigation and that they had little culpability with respect to the underlying conduct.  They argue that they did not breach their fiduciary duties under ERISA because they did not know very far ahead of time that Ready Metal was going to close and because they had a reasonable belief that BCBS would cover their employees for 2005.  Although defendants admit they were not paying over to BCBS the amounts they were withholding from their employees, they contend that they thought the funds they sent in were sufficient "to keep the plan going."  Def. Resp. at 7.  Furthermore, defendants assert that it was more important to Ready Metal's employees to have jobs than to have their health insurance premiums fully paid on time each month.

Defendants breached their fiduciary duties under ERISA when they withheld money from plaintiffs' paychecks for health insurance premiums but knowingly failed to pay the withholdings over to BCBS.  In doing so, they left their employees completely

5

uninsured and, worse yet, unaware that they were uninsured. By any standard, their conduct was unreasonable (to be charitable about it). Accordingly, defendants are sufficiently culpable that the first factor weighs in favor of an award of fees.

**B.     Ability to satisfy personally an award of attorney's fees**

The Radeks contend that although they are not "destitute," they have no current income and would have to use funds from their retirement accounts to satisfy any judgment. Def. Resp. at 8. In his sworn affidavit, Edward A. Radek, Jr. also contends that he might have to sell his home to generate sufficient funds. Neither defendant has provided any financial statements to substantiate his claims. There is no indication that defendants would be unable to pay reasonable attorney's fees here or that the award would be paid out of the pockets of anyone but them. *Cf. Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 829 (7th Cir. 1984) (noting that this factor would weigh against the plaintiff if plan assets were used to pay for attorney's fees, to the detriment of other beneficiaries). The fact that defendants might have to dip into their retirement savings to satisfy a fee award does not persuade the Court that plaintiffs should be denied attorney's fees. As a result, this factor also weighs in plaintiffs' favor.

**C.     Deterrent value of an award of attorney's fees**

Plaintiffs contend that the third factor weighs heavily in their favor. They argue that failing to impose a cost on defendants' conversion of the withholdings from their employees' paychecks would incentivize other employers to do the same, knowing that they would only have to repay the money if they were caught. Defendants, on the other hand, argue that their situation is unique and thus a fee award would be very unlikely to

deter anyone else.  The Court agrees with plaintiffs and finds that the prospect of having to pay attorney's fees may well deter other employers from using employee withholdings to solve cash flow problems.

### D.  Benefit conferred on members of the pension plan as a whole

Plaintiffs contend that their attorneys' pre-suit representation of other Ready Metal employees with vacation pay claims, but no medical expenses, conferred a benefit on plan members as a whole.  Plaintiffs sought to bring this suit as a class action but were unable to find employees other than themselves who had unpaid medical claims.  Accordingly, this factor is of limited applicability.

### E.  Relative merits of the parties' positions

Though this case was resolved by settlement, the Court believes that defendants' position had little merit.  Their primary defenses were that they did not know well in advance that Ready Metal would go out of business and that they paid more money over to BCBS in 2005 than they withheld from their employees' paychecks.  As plaintiffs discovered, however, the amount defendants paid to BCBS in 2005 equaled, to the penny, the amount defendants owed for their employees' 2004 coverage.  In other words, defendants' 2005 payments had nothing to do with the 2005 withholdings.  Furthermore, whether defendants knew Ready Metal was about to go out of business is irrelevant to whether defendants improperly converted plaintiffs' withholdings.  The Court finds that the fifth factor also supports an award of fees.

In sum, four of the five applicable factors support an award of fees.  Under both the multi-factor test and the "substantially justified test," defendants' position was not

substantially justified or taken in good faith.  As a result, the Court concludes that an award of reasonable attorney's fees under 29 U.S.C. § 1132(g)(1) is warranted.

**II.     Calculation of fees**

The Court begins its analysis of reasonable attorney's fees by calculating the "lodestar": "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).   Because plaintiffs are seeking fees, they bear the burden of proving the reasonableness of "the hours worked and the hourly rates claimed."  *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999).  The Court must exclude any hours not "'reasonably expended' on the litigation," and may, in its discretion, "increase or reduce the modified lodestar amount."  *Id.* (quoting *Hensley*, 461 U.S. at 434-35).  *Hensley* requires a petitioner for fees to exercise "billing judgment," meaning that the petitioner must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Hensley*, 461 U.S. at 434.

Using the "lodestar" method, plaintiffs seek attorney's fees of $129,735.00 for a total of 351.25 hours of attorney, law clerk, and paralegal time.  The following chart summarizes the hourly rates requested and the time spent by each person for whom fees are requested.

| Name | Level | Hourly Rate | Hours | Total |
|------|-------|-------------|-------|-------|
| C. Krislov | Senior Partner | $600 | 54.65 | $32,790.00 |
| E. Dixon | Associate | $350 | 251.80 | $88,130.00 |
| J. Salas | Law Clerk<br>Associate | $175<br>$250 | 8.40<br>13.00 | $1,460.00<br>$3,250.00 |
| C. Costa | Law Clerk | $175 | 11.30 | $1,977.50 |
| R. DeWitte | Law Clerk | $175 | 10.10 | $1,767.50 |
| A. Keller | Law Clerk | $175 | 0.70 | $122.50 |
| S. Proska | Paralegal | $175 | 1.30 | $227.50 |

### A. Billing rates

#### 1. Attorneys

Plaintiffs seek hourly rates of $600 for Mr. Krislov, $350 for Ms. Dixon, and $250 for Mr. Salas for the time he spent working on the case after he was admitted to the bar. The reasonable hourly rate for an attorney is the market rate for his services. *See Fogle v. William Chevrolet/Geo, Inc.*, 275 F.3d 613, 615 (7th Cir. 2001). An attorney seeking fees has the burden of proving his market rate, but once he does, opposing counsel bears the burden of showing why the hourly rate should be lower. *Spegon*, 175 F.3d at 554-55. There is a presumption that an attorney's actual billing rate is the best measure of the market rate for his services. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1310 (7th Cir. 1996). If evidence of the true billing rate is unavailable, as may be the case when a lawyer works exclusively on contingency, the Court must look to "the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Spegon*, 175 F.3d at 555 (citations omitted).

Plaintiffs have not submitted any material supporting an actual billing rate for Mr. Krislov or his associates – which is unsurprising in view of the fact that K & A's work appears typically to involve cases that it handles on a contingent-fee basis and/or in anticipation of court-awarded fees. As a result, the Court must determine whether plaintiffs have proven by alternative means that the market rate for Mr. Krislov's services is $600 and that the market rates for the services of Ms. Dixon and Mr. Salas are $350 and $250, respectively. The Court concludes that plaintiffs have failed to do so.

First, plaintiffs have submitted a fifteen-page law firm resume for K & A, detailing the types of litigation the firm has handled, with numerous references to specific cases. Pl. Pet'n, Ex. 2. Despite this level of detail, however, the resume contains no information at all about the hourly rates or overall fees that K & A obtained in any of those cases.

Second, plaintiffs have submitted no information – none – regarding any hourly rates used in fee awards for Mr. Krislov or his firm in other cases in which fees were contested. *See People Who Care*, 90 F.3d at 1312 (fee awards in other cases "are clearly evidence of an attorney's market rate"). The Court conducted a Westlaw search and turned up only one case within the last ten years that referenced a fee award for Mr. Krislov in which an hourly rate was set following a dispute over fees.[1] In *Krislov v.*

---

[1] The Westlaw search also produced a recent case tried before the undersigned judge in which Mr. Krislov testified about fees he had charged; the case involved a fee dispute between a different attorney and clients that he and Mr. Krislov had jointly represented, until the other attorney had what one might characterize as a falling-out with the clients. In that case, *Sanchez & Daniels v. Koresko & Assocs.*, No. 04 C 5183,

(continued...)

*Rednour*, 97 F. Supp. 2d 862 (N.D. Ill. 2000), which was litigated in the late 1990's, Mr. Krislov (who was representing himself) sought a fee award based on an hourly rate of $465 per hour for himself and $275 per hour for an associate approximately four years out of law school. *Id.* at 868. Judge Elaine Bucklo rejected those rates and applied the same rate of $325 per hour that she had granted to attorneys with at least as much experience in another case. *Id.* at 870. Assuming that rate to be an appropriate benchmark, it does not get Mr. Krislov anywhere near $600 per hour even if one includes reasonable increases for additional experience and the cost of living.

All plaintiffs have submitted in support of the proposed hourly rates for Mr. Krislov and the other attorneys at his firm is an affidavit from Mark D. DeBofsky, a Chicago attorney with a few years less experience than Mr. Krislov who concentrates his practice in employee benefit litigation on the plaintiff's side. Mr. DeBofsky stated in his affidavit that he currently charges $425 per hour but anticipated increasing the rate to $500 early this year (2008). Pl. Pet'n, Ex. 3, DeBofsky Affid. ¶ 2. The Court cannot determine from Mr. DeBofsky's affidavit whether he actually charges this rate to, and collects it from, clients who are paying him on an hourly basis, or whether (for example) this is a rate he has been awarded by courts in similar litigation. Mr. DeBofsky goes on

---

[1](...continued)
2006 WL 3240105 (N.D. Ill. Sept. 14, 2006), the Court's written decision following a bench trial reflected that Mr. Krislov had "credibly testified at trial that his firm spent, using its normal hourly rates, about $90,000 in attorney time" on particular aspects of the underlying case. *Id.*, *14. The Court's decision does not reflect, and the Court does not recall, whether Mr. Krislov testified as to what those "normal hourly rates" were. Even were that information favorable to plaintiffs, however, they have forfeited reliance on it by failing to provide it to the Court. The proponent of fees has the burden of proving the appropriate hourly rate; it is not the Court's job to ferret it out.

to state, in what can only be described as conclusory fashion, that "the requested rates sought for Mr. Krislov for himself and his firm" – rates that Mr. DeBofsky does not specifically reference in his affidavit – are reasonable. *Id.* ¶ 6. Given the conclusory nature of this submission, and the rather significant disparity between Mr. DeBofsky's own rate during the relevant period and that sought by Mr. Krislov, the Court does not find the affidavit at all persuasive in supporting the hourly rates claimed for the K & A personnel.

Finally, plaintiffs have submitted a December 2006 article from the *National Law Journal* providing a sampling of rates charged by attorneys at some of the nation's largest law firms. *Id.*, Ex. 3, *Nat'l Law Journal* Survey at 1. This survey is far too general to be helpful, and to the extent it is helpful, it does not assist Mr. Krislov in establishing his requested rate. If one focuses simply on the Chicago-based law firms referenced in the survey, there are only nine such firms – hardly a representative sample to start off with – and the article discloses only that those nine firms bill their partners' time within the following broad ranges:

| | |
|---|---|
| Bell, Boyd & Lloyd | $310 to $690 per hour (no median provided) |
| Brinks Hofer | $275 to $625 per hour (median $460) |
| Gardner Carton | $275 to $650 per hour (median $425) |
| Jenner & Block | $410 to $800 per hour (median $495) |
| Lord, Bissell | $305 to $665 per hour (median $450) |
| McAndrews, Held | $260 to $600 per hour (no median provided) |
| Neal, Gerber | $350 to $695 per hour (median $450) |
| Vedder, Price | $315 to $560 per hour (median $400) |

Winston & Strawn    $365 to $800 per hour (median $510)

*Id.* The survey is unhelpful because it gives the Court no point of comparison for attorneys with Mr. Krislov's experience level; it is not limited to attorneys who handle litigation; and it does not focus on attorneys who handle employee benefits litigation or other litigation of the type that K & A handles. And to the extent the information is relevant, it tends not to support a rate of $600 per hour for Mr. Krislov, which would place him near the high end of the range for each law firm, aside from Winston & Strawn and Jenner & Block, mega-firms whose billing rates have not been shown to be in any way comparable to rates charged for litigation of the type involved in this case. The same is true of the $350 hourly rate sought for Ms. Dixon, who had around three and one-half years of experience following law school during the time that most of the work was performed on this case. *See also Krislov*, 97 F. Supp. 2d at 868-69 (declining to rely on similar comparisons to a *Illinois Legal Times* survey cited by Mr. Krislov).

There is one final reason why the evidence plaintiffs have submitted fails to establish that the proposed hourly rates are appropriate. As the Seventh Circuit has indicated, in determining whether an elevated hourly rate like those plaintiffs seek here is appropriate, a court may take into account, among other things, whether the lawyers "achieve[d] the time savings [ ] implied by their higher rates." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1151 (7th Cir. 1993). That is certainly not the case here. As the Court will discuss later in this decision, the amount of attorney time devoted to particular significant tasks is not indicative of the time savings that one would expect with hourly rates at the levels plaintiffs have requested.

For these reasons, the Court concludes that plaintiffs have failed to establish that

a $600 hourly rate is appropriate for Mr. Krislov, that a $350 rate is appropriate for Ms. Dixon, or that a $250 rate is appropriate for Mr. Salas.  To determine an appropriate rate, the Court has as benchmarks only Mr. DeBofsky's stated hourly rate of $425 for work similar to that done by K & A here and the $325 rate awarded to Mr. Krislov for work in the late 1990's in the *Krislov v. Rednour* case, which is dissimilar to the present case.  And as noted earlier, Mr. DeBofsky's affidavit does not reflect whether his stated hourly rate is a "market rate" in the way that term is used in *People Who Care*, *Spegon*, and other pertinent Seventh Circuit decisions.  Based on these benchmarks, and in the absence of any other probative evidence from plaintiffs, the Court sets the appropriate hourly rates for Mr. Krislov at $400, for Ms. Dixon at $225, and for Mr. Salas (for his work as a lawyer) at $150.[2]

### 2. Paralegals

The reasonable hourly rates for paralegals are also the market rates for their services.  *Spegon*, 175 F.3d at 556.  Plaintiffs seek $175 per hour for Mr. Proska. Plaintiffs have not provided any information regarding the reasonableness of this rate, such as Mr. Proska's qualifications and experience or the rate at which other Chicago firms bill out paralegals with comparable experience.  Plaintiffs have failed to meet their burden of documenting the reasonableness of Mr. Proska's rate.  The Court need not settle on an appropriate rate, however, because, as will be explained below, the Court will disallow in full the 1.3 hours claimed by plaintiffs for Mr. Proska.

---

[2] The Court declines to simply duplicate Mr. DeBofsky's stated hourly rate of $425 per hour because, as stated earlier, his affidavit gives no indication whether he actually bills and collects at that rate in similar litigation or has obtained it via fee awards.

### 3. Law clerks

Plaintiffs seek an hourly rate of $175 for the firm's law clerks, *i.e.*, law students working at K & A. Defendants object to this rate but do not suggest an alternative. Def. Resp. at 10. The Court agrees that $175 per hour is an unreasonably high rate for work performed by students who do not yet have law licenses. As compared with Mr. Salas' hourly rate after he obtained his law degree, K & A's law clerk rate is 30% less than the rate for its first-year associates. The Court does not believe that this discount accurately reflects a law student's significant inefficiencies or, just as importantly, the need for the firm to bill additional attorney time to properly supervise the students. The Court finds that an hourly rate of $125 is reasonable for the work performed by K &A's law clerks. *See Top Tobacco, L.P. v. N. Atl. Operating Co.*, 2007 WL 2688452 at *3 (N.D. Ill. Sept. 6, 2007) (Kennelly, J.).

### B. Hours

The party seeking fees has the burden of proving the reasonableness of the hours worked by counsel. *Spegon*, 175 F.3d at 555. Plaintiffs claim 351.25 hours for their attorneys and paralegal to litigate the case. They contend that the case was "leanly lawyered," Pl. Pet'n at 13, and that they were forced to devote extra time to replying to defendants' response to their fee petition because it was "grossly inaccurate." Pl. Reply at 9 n.4.

Defendants raise several specific objections to the hours claimed by plaintiffs. First, they argue that it was excessive for plaintiffs to spend 90.4 hours researching the single, familiar issue – breach of fiduciary duty – underlying their complaint. Because

Mr. Krislov claims considerable expertise in this area of the law, defendants contend that K & A should have been able to complete the necessary research in a small fraction of the time it has submitted.  Defendants also argue that it was excessive for plaintiffs to spend 57.7 hours drafting the one-count, eleven-page complaint.  Plaintiffs respond that defendants have failed to analyze K & A's research or writing or to employ an expert to do the same.

In determining whether attorney time claimed is reasonable, the Court must exclude time that is "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  This assessment has been complicated in this case by the fact that plaintiffs simply submitted K & A's time records – which break down the work done by date and attorney – and did not provide an activity-specific breakdown of the attorney time. *See generally In re Continental Ill. Securities Litig.*, 572 F. Supp. 931, 934 (N.D. Ill. 1983).  In other words, plaintiffs provided no summary of how much time was spent researching and preparing the complaint; how much time was spent on discovery; how much time was spent on settlement efforts; and so on.

The Court has done its best to sift through K & A's time records to ascertain how much time each lawyer spent on the tasks of research preliminary to filing the complaint and drafting the complaint itself.  It appears that the lion's share of the time on these tasks was spent by Ms. Dixon, who recorded 107.1 hours; Mr. Krislov recorded 2.5 hours; Mr. Salas recorded 8.4 hours during the period he worked as a law clerk; and Mr. Costa and Mr. DeWitte, both law clerks, spent 10.3 and 2.5 hours, respectively.[3]

---

[3]  When totaled, this time does not match up with the time that defendants say K
(continued...)

The time spent on these tasks was significantly in excess of what is reasonable, even giving plaintiffs the benefit of the doubt. The complaint is eleven pages long and asserts a single claim, for breach of fiduciary duty under ERISA. After fairly routine preliminary allegations stating the basis for jurisdiction and venue and identifying the parties, the recitation of the facts concerning defendants' alleged conduct takes up about four pages, *see* Compl. ¶¶ 13-36, and the recitation of the facts concerning the plaintiffs and their medical bills takes up another two, *see id.* ¶¶ 37-51. The allegations in "Count 1" (the only count) asserting the elements of liability are relatively simple and straightforward. There is nothing particularly complicated about the facts or, from a legal standpoint, about the claims. The Court drafted plenty of complaints in its day and understands full well that it can take a significant period of time to research and draft a short, to-the-point complaint like this one. But that does not explain the fact that Ms. Dixon took over 100 hours to research and draft this particular complaint. The explanation is, in all likelihood, her relative lack of experience at the time she drafted the complaint (the Court hastens to add that it is saying this not as a criticism of Ms. Dixon, but rather simply to note what appears to be obvious). In any event, plaintiffs have made no effort to justify the very large amount of time spent researching and preparing the complaint even after defendants specifically attacked the reasonableness

---

[3](...continued)
& A spent on these tasks. Defendants have not, however, explained how they got to their figures. The Court reached its own figures by adding those hours not additionally challenged by defendants for the following other reasons: non-client work, clerical work, and work on issues unrelated to this litigation. The Court's treatment of those challenged hours will be discussed later.

of that time in their response to the fee petition.[4]  Again, the party seeking fees has the

burden of showing that the fees claimed (including the hours spent) are reasonable.

*Hensley*, 461 U.S. at 433.

It is a truism that newer lawyers tend to be less efficient than more experienced

lawyers. It appears that Ms. Dixon researched and drafted the complaint largely on her

own, working to some extent with law clerks and paralegals, and with Mr. Krislov

involved to a relatively small extent.  There certainly is nothing unreasonable about this

as a strategy for staffing.  What is missing, however, is the exercise of the "billing

judgment" mandated by *Hensley*.  The Court highly doubts that a reasonable lawyer

billing a client on an hourly basis actually would have billed the plaintiffs for over 100

---

[4] Here is the totality of plaintiffs' back-of-the-hand response to defendants'
attack:

> Defendants complain about the time spent and claim that there was no
> basis for a fiduciary breach claim, then assert that it was simple.  No
> expert.  No analysis of the complaint.  No analysis of the research.  Just
> Defendants' assertion that Ms. Dixon took too many hours to research
> and draft the complaint.

> We are eager to see what Mr. Barone charged his clients because he
> failed to comply with Local Rule 54.3's requirement that defendants
> produce their own attorney billing records.

Pl. Reply at 8.  Plaintiffs' first point is too curt to be helpful; their second point is lacking
in merit.  The reason that there was no Local Rule 54.3 submission was that the Court
waived compliance with that Rule at the conclusion of the settlement conference on
October 10, 2007, because the Court was concerned that full-blown compliance with
the Rule would be unduly burdensome, time-consuming, and expensive, particularly in
a case in which it was already abundantly clear that a challenge would be made to the
reasonableness of the fees to be claimed.  In any event, the Court has no basis to
believe that the amount of time that defendants' counsel spent preparing the answer
would shed any light on the reasonableness of the time spent by Ms. Dixon and others
preparing the complaint.

hours by a third-year associate to research and prepare a complaint with issues as relatively simple as this one.  Yet no such judgment was exercised in submitting the fee petition.  Left largely to its own devices, the Court concludes that Ms. Dixon's time spent researching and drafting the complaint exceeds by a significant degree what would be reasonable. The Court reduces her time by one-half, to 53.5 hours, finding that this is a generous estimate of the amount of time *reasonably* spent researching and drafting this particular complaint.  The Court applies the same reduction to the time charged to these tasks by the three law clerks, Mr. Costa (reduced to 5.1 hours), Mr. Salas (a law clerk at the time, reduced to 4.2 hours), and Mr. DeWitte (reduced to 1.2 hours).

Defendants next argue that Ms. Dixon improperly charged time for meetings and communication with individuals who were not clients in this case.  Defendants identify eleven such entries.[5]  Plaintiffs protest that although the people identified by defendants were not litigants in this case, they were still clients.  Nonetheless, plaintiffs concede this point.  The Court has identified several non-client entries in addition to those that defendants brought to its attention and will exclude all of them from Ms. Dixon's hours.[6] In total, the Court disallows 10.6 hours that Ms. Dixon claimed for time spent on non-litigants.

Next, defendants contend that it was improper for K & A to bill clerical duties,

----

[5]  Those entries are:  9/16/05, Wilk; 9/19/05, Elder; 9/22/05, Candos and Cenci; 9/27/05, Candos; 9/29/05, Minet; 10/5/05, Smith; 10/6/05, Smith; 10/10/05, Smith, 10/11/05, Smith; 10/21/05, Langlean.  Def. Resp. at 11.

[6]  These include:  9/13/05, Nowak, Wietrzak, Gorup, Smith, Janis; 9/16/05, Deltoyos; 9/20/05, Patel; 9/21/05, Candos; 10/3/05, Smith; 2/6/06, Elder; 10/23/06, Elder.

such as faxing and sending letters, at attorneys' hourly rates. Courts should disallow "hours expended by counsel 'on tasks that are easily delegable to non-professional assistance.'" *Spegon*, 175 F.3d at 553 (quoting *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995)). The same principles apply to paralegal time, such that the Court "should disallow time spent on what are essentially 'clerical' or secretarial tasks." *Id.* (quoting *People Who Care*, 90 F.3d at 1315). K & A may not appropriately claim hours spent by law clerks, attorneys, or paralegals making deliveries, faxing, scanning or mailing documents.[7] In sum, without even addressing for the present the bunched billing entries – block billing – in which K & A grouped with legal work administrative tasks such as faxing and scanning, the Court disallows Mr. Proska's 1.3 paralegal hours in their entirety, all .7 hours of Ms. Keller's and one hour of Mr. Costa's law clerk hours, and .6 hours of Ms. Dixon's attorney hours.

Defendants also contend that K & A billed a significant amount of time spent on wage and vacation claim issues that were not part of this litigation, and they argue that there may be many more such hours that are impossible to identify due to the vagueness of many entries. Plaintiffs have not responded to this objection. Though K

---

[7] Accordingly, the Court disallows the following hours: 4/20/06, C. Costa, Law Clerk, 1 hour ($175) to "[c]heck[] on copy job at law division"; 12/13/06, E. Dixon, Attorney, .2 hours ($70) to "[s]en[d] scanned copies of settlement agreement to Steve Christenholz"; 7/13/07, A. Keller, Law Clerk, .7 hours ($122.50) for "[d]elivery of courtesy copy to 7th circuit"; 8/8/07, E. Dixon, Attorney, .4 hours ($140) to "[f]ax[] and sen[d] letter to Barone and Judge Mason re: extenuating circumstances of Pasternak and Laskowski"; 8/8/07, S. Proska, Paralegal, .5 hours ($87.50) to "[d]eliver courtesy copy to Judge Mason at Federal Courthouse for Atty Dixon"; 8/17/07, S. Proska, Paralegal, .5 hours ($87.50) to "[d]eliver courtesy copy to Judge Mason re Ready Metal pre-settlement conference"; 11/29/07, S. Proska, Paralegal, .3 hours ($52.50) to "[d]eliver courtesy copy to Judge Kennelly for Atty Salas."

& A asserts that it resolved the wage and vacation claims of a possibly overlapping group of Ready Metal employees with the assignee of Ready Metal's assets, the Court fails to see why defendants should reimburse K & A in this case for their hours spent pursuing those claims, particularly when none of those claims were asserted in plaintiffs' complaint.  Because defendants have not identified the particular entries they believe pertain to wage and vacation claim issues, the Court undertook its own review of K & A's billing records.  Due to block billing – the lumping of disparate tasks into a single time entry – it is difficult to distinguish time spent on issues relating to this litigation from that spent on wage and vacation claims.  Setting aside these block-billed entries and the previously disallowed entries pertaining to non-litigants, the Court has identified 8.6 of Ms. Dixon's claimed hours as non-reimbursable by reason of their subject matter.[8]  Accordingly, the Court disallows those hours.

Defendants next contend that Mr. Krislov's and Ms. Dixon's joint appearances at a motion hearing on July 19, 2007, a settlement conference on August 22, 2007, and a status hearing on September 5, 2007 were unnecessary.  There was absolutely nothing

---

[8]  Those entries are: 11/29/05, 4.4 hours ("Researching wage claims; drafting memo for Atty Krislov"); 9/5/06, .4 hours ("Call from Peg Laskowski re vacation pay"); 9/25/06, .2 hours ("Returned call to Peggy Laskowski"); 9/28/06, .5 hours ("Telephone call from Peg Laskowski re vacation pay from High Ridge Partners"); 9/28/06, .1 hours ("Email to Steve Christenholz re Ready Metal vacation pay"); 10/20/06, .3 hours ("Call from Peg Laskowski re vacation pay and High Ridge Partners"); 10/20/06, .1 hours ("Email to Steve Christenholz re vacation pay"); 11/7/06, .5 hours ("Call to client Laskowski, Elder, Pasternak and Mohedano re settlement agreement and amount of vacation pay"); 11/7/06, .2 hours ("Call to C. Mohedano re vacation pay"); 11/9/06, .3 hours (Call from Bill Pasternak re vacation payout"); 11/13/06, 1 hour ("Confirmed vacation pay for Pasternak, Mohedano, Laskowski, Elder; emailed same to Christenholz"); 12/29/06, .6 hours ("Call from Carol Mohedano re taxes taken out of vacation pay; called back with Atty Krislov").

wrong with having two lawyers attend these sessions; that is one way that less-experienced lawyers are trained. Had K & A exercised the required "billing judgment," however, it would have sought fees for only one lawyer for the status and motion hearings. Though using two or more attorneys on one matter "may well reduce the total expenditures by taking advantage of the division of labor," *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988), the joint appearances at the motion and status hearings generated no such efficiencies. The Court will disallow Ms. Dixon's 2.7 hours on these occasions (1.9 hours on 7/19/07 and .8 hours on 9/5/07).

The settlement conference is a different matter. Because of her role in the case, Ms. Dixon likely was able to contribute to the conference in a material way, such that Mr. Krislov would have had to spend extra time in preparing to be able to duplicate her role. Though the September 19, 2007 conference at issue was with the magistrate judge, the Court relies in this regard on its own experience at the second settlement conference on October 10, 2007. The Court will not cut either attorney's hours for the settlement conference.

Defendants next argue that it was excessive for Mr. Krislov to spend almost 22 hours working on this fee petition. K & A also billed nearly twenty additional hours on its reply to defendants' response to the fee petition. Defendants also challenge the accuracy of the billing for the petition, noting that Mr. Krislov stated in the petition that Ms. Dixon drafted the petition and that he revised it, but that only hours for Mr. Krislov appear in the bill, suggesting that her hours are being billed at his much higher rate. In their reply, plaintiffs have added 4.8 hours that Ms. Dixon purportedly spent drafting the petition prior to leaving the firm. Time expended preparing a fee petition is

compensable to the extent that it is not disproportionate to the time spent on the merits of the case. *See Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). In this case, plaintiffs expended a total of over 46 hours on the issue of fees, following a case they expended a total of about 199 allowable hours litigating. The Court finds this ratio of approximately 23% unreasonable and the 46 hours claimed excessive. The Court disallows one half of each attorney's hours spent working on the fee petition and reply. Accordingly, the Court reduces Mr. Krislov's hours to 14.1, Ms. Dixon's to 2.4, and Mr. Salas's to 6.5.

Defendants next point out that many of K & A's time entries consist of block billing. Several of K & A's block-billed entries claim time for clerical work that is not compensable, as the Court noted earlier when addressing the issue of purely clerical time entries. Because it is impossible to determine what portion of these entries relate to work that is not compensable, the Court disallows such entries by Ms. Dixon, totaling 10.1 hours, by two-thirds, to 3.4 hours.[9]

As a result of the rulings made thus far, the adjusted lodestar figures are as

_____

[9] The entries are: 11/4/05, 1.1 hours ("Changes to P. Cavanaugh and faxed letter"); 11/21/05, .6 hours ("Drafted and faxed letter to S. Christenholz re: phone call"); 12/28/05, 1.9 hours ("Drafted letter to Christenholz; faxed same"); 3/8/07, .4 hours ("Letters to Mohedano and Laskowski; Federal Express complaint to both"); 7/18/07, .4 hours ("Copied Motion and answer; prepare for hearing tomorrow"); 8/8/07, 1 hour ("Revisions to Demand letter; faxed and mailed same to Defendant's [sic]; got up to date information re fees"); 8/16/07, 1.4 hours ("Drafted letter to Judge Mason re Pre conference letters; prepared same to be sent to judge's chambers"); 9/10/07, .8 hours ("Discuss with Atty Krislov re medical bills; stamped confidential and scanned same; emailed to Barone"); 10/23/07, 1.6 hours ("Drafted letter to Plaintiff's for signature on agreement; acknowledge of allocations; prepare release for Federal Express"); 10/26/07, .9 hours ("Drafted faxed letter to A. Barone re settlement agreement with signed pages").

follows:

| Name | Level | Hourly Rate | Hours | Total |
|------|-------|-------------|-------|-------|
| C. Krislov | Senior Partner | $400 | 39.3 | $15,720.00 |
| E. Dixon | Associate | $225 | 166.5 | $37,462.50 |
| J. Salas | Law Clerk<br>Associate | $125<br>$150 | 4.2<br>6.5 | $525.00<br>$975.00 |
| C. Costa | Law Clerk | $125 | 6.2 | $775.00 |
| R. DeWitte | Law Clerk | $125 | 8.9 | $1112.50 |
| A. Keller | Law Clerk | $125 | 0 | $0 |
| S. Proska | Paralegal | $175 | 0 | $0 |

Under the revised lodestar, plaintiffs' requested attorney's fees total $56,574.50.

Defendants contend that in addition to block-billing clerical and legal tasks in the same entries, plaintiffs have submitted unacceptably vague bills with tasks grouped in such a way that it is impossible to assess the reasonableness of the time spent.  When a fee petition is inadequately documented or vague, the Court may reduce the entire fee award by a proportionate amount.  *See Harper v. City of Chi. Heights*, 223 F.3d 593, 604-05 (7th Cir. 2000).  The Court concludes, however, that the time that it has disallowed deals adequately with defendants' contention, such that no further reduction is necessary or appropriate.

**III.    Calculation of costs**

Plaintiffs claim that they are entitled to recover expenses totaling $2,603.97 incurred by their attorneys.  This sum represents $93.58 of telephone bills, $20 of taxi rides, $120 to a process server, $46.94 in postage, $600.40 in photocopying, at twenty cents per page, $918.09 in Westlaw fees, $350 in Federal Express charges, $350 in

filing fees, and $29 in faxes, at one dollar per page. Defendants contend that plaintiffs'
request for costs lacks sufficient particularity, listing "postage" and "photocopying" with
no identification of what was copied or mailed and for what purpose, and requesting
Westlaw research charges over many months with no identification of what was
researched, or even whether the research had anything to do with this case.

Section 1132(g)(1) of ERISA authorizes a court to shift reasonable costs incurred
by the prevailing party as well as attorney's fees. Though plaintiffs have not identified
the specific subjects of their Westlaw research, the types of photocopies made and
faxes sent, or the people they called, the Court does not find the claimed expenses to
be excessive or unreasonable when viewed in the context of the entire litigation.
Accordingly, the Court awards plaintiffs expenses of $2,603.97.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' fee petition [docket no.
31] in part. The Court awards attorney's fees of $56,574.50 and costs of $2,603.97, for
a total of $59,178.47.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 3, 2008