IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM PASTERNAK, MARGARET LASKOWSKI for the estate of LEONARD LASKOWSKI, and CAROL MOHEDANO,<br><br>Plaintiffs,<br><br>vs.<br><br>DENNIS R. RADEK and EDWARD A. RADEK, JR.,<br><br>Defendants. | Case No. 07 C 2858 |

**MEMORANDUM OPINION AND ORDER**
**ON MOTION FOR RECONSIDERATION**

MATTHEW F. KENNELLY, District Judge:

Plaintiffs have moved for reconsideration of the Court's decision of April 3, 2008, in which the Court granted their petition for attorney's fees and costs, but awarded an amount significantly lower than plaintiffs had requested. For the reasons stated below, the Court denies plaintiffs' motion but clarifies its decision in certain respects.

**Background**

Plaintiffs settled claims against Dennis and Edward Radek, the owners of plaintiffs' former employer Ready Metal Manufacturing Company. They sued the Radeks under the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1132(e)(1), alleging that the Radeks had converted sums withheld from the plaintiffs' paychecks for medical insurance premiums and used them for other purposes rather than for medical insurance. As a result, the insurance premiums went unpaid for several months, leaving the plaintiffs without insurance coverage, unbeknownst to them. A few months later, Ready Metal closed its doors and

assigned its assets for the benefit of creditors. Each of the three plaintiffs ended up getting stuck for significant medical bills they had incurred during the several months during which they were employed but lacked insurance coverage. The total of these bills was approximately $30,000.

Plaintiffs sued the Radeks under ERISA for breach of fiduciary duty. In the suit, they were represented by Clinton Krislov and Elizabeth Neugent Dixon of the law firm of Krislov & Associates (K&A). The Radeks answered the complaint by claiming that they had paid over far more to the insurer during the year in question than they had withheld from the employees' paychecks and that they could not have anticipated either the collapse of Ready Metal or the cancellation of the employees' insurance coverage.

At an early stage of the case, given the relatively modest amount of damages claimed, the Court referred the matter to a magistrate judge for the purpose of conducting a settlement conference. The conference did not produce a settlement. The Court thereafter held a status hearing to determine how to proceed. As best the Court can recall, counsel advised that the settlement conference had failed due to a dispute over about $11,000 of the $35,000 then claimed by plaintiffs as damages. Due to the modest amount in dispute, the Court determined to hold a second settlement conference and conducted the conference itself, in October 2007. After a mediation session in which counsel and all but one of the parties participated, the parties reached a settlement under which the plaintiffs would be paid $30,000, which appeared to satisfy all their medical-expense claims that should have been covered under Ready Metal's insurance plan, and the issue of attorney's fees would be submitted to the Court for its determination. The Court advised the parties that in briefing the matter of attorney's fees, the Court was opting out of Local Rule 54.3, based on its view that the sometimes cumbersome and time-consuming tasks contemplated under that Rule would only exacerbate what appeared to

be a festering dispute over the amount of fees claimed, because it would increase the amount of work required by both sides' counsel.

Following the settlement, plaintiffs petitioned for attorney's fees. Plaintiffs sought attorney's fees of $129,735 and expenses of $2,604. The fee request was based on claimed hourly rates of $600 for Mr. Krislov, $350 for Ms. Dixon (a third-year associate at the relevant time) and $250 for Mr. Salas, another more junior associate; and $175 for various law clerks and paralegals. K&A submitted time records reflecting that Mr. Krislov had recorded about 55 hours of time working on the case, Ms. Dixon had recorded about 252 hours, Mr. Salas about 13 hours, and the various law clerks and paralegals a total of about 32 hours. Defendants objected to the fee petition, arguing that plaintiffs were not entitled to recover fees under ERISA, and they also objected to the amounts claimed on various grounds.

After the matter was fully briefed, the Court issued a written decision, dated April 3, 2008. The Court summarizes that decision briefly. First, the Court found that plaintiffs were entitled to fees under ERISA, rejecting defendants' contrary argument. Second, the Court found that K&A had failed to support the hourly rates it sought and instead awarded hourly rates of $400 for Mr. Krislov, $225 for Ms. Dixon, $150 for Mr. Salas, and $125 each for the law clerks. Third, the Court found that K&A had failed to show that the time it had spent on various tasks – primarily 107 hours Ms. Dixon recorded for researching and preparing plaintiffs' complaint – was reasonable, and it reduced that time by one-half. Fourth, the Court eliminated certain other time entries claimed by K&A because they concededly concerned clients who were not a part of the complaint in this lawsuit. Fifth, the Court eliminated or reduced other time entries on the ground that they were unreasonably duplicative, involved billing law clerk or paralegal time for clerical tasks, or were "block billing" entries that combined arguably compensable with plainly non-compensable time. Sixth, the Court found excessive the time charged by Mr. Krislov for preparing the fee petition. The result was that the Court allowed a total of a little over 39 hours

for Mr. Krislov, just under 167 for Ms. Dixon, 6 for Mr. Salas, and about 19 for the law clerks. The total amount, at the reduced hourly rates the Court approved, was $56,574.50. The Court allowed plaintiffs' claim for expenses in full, a total of $2,604.

**The motion for reconsideration**

Plaintiffs (actually, K&A) make the following arguments in their motion for reconsideration:

1) K&A says that what it characterizes as "the Court's tone, clearly implying deficiencies in either Ms. Dixon's work, or the rates and hours, sought by the firm, is unfortunate." Motion at 1.

2) K&A says plaintiffs' complaints involved matters personally significant to them but "smaller than [K&A] would consider ordinarily for a case." Nonetheless, because Mr. Krislov "personally felt that what the Radeks had done was so offensive," the harm to the plaintiffs so unfortunate, and the likelihood of other firms taking the case on so slim, he decided to represent the plaintiffs. *Id.* at 1-3.

3) K&A argues that though the Court was "less than charitable" with Ms. Dixon, she devoted "exhaustive time" to the case. In the motion, K&A attempts to justify the amount of time that Ms. Dixon spent prior to the complaint – one of the key matters addressed in the Court's April 3 decision. Mr. Krislov says that "[i]f it was error to submit all [Ms. Dixon's] time . . . , the 'discretion in billing' error was mine, and did not warrant the negative tones regarding Ms. Dixon's work." *Id.* at 3.

4) K&A argues that the Court erred in reducing the firm's claimed hourly rates. *Id.* at 4.

5) K&A argues that the Court failed to give consideration of the results obtained. *Id.* at 4.

6) Mr. Krislov closes with the following plea:

[W]e think we did both a good deed and a good job. If the Court feels we asked for more than we were entitled, than was my failure alone. Nonetheless, in reading through the public record of this litigation, the Radeks and their disingenuous counsel bear little adverse note, while I, Ms. Dixon, and my firm took on a small-dollar undesirable high-risk claim for three seriously abused employees, get [sic] them a more-than-full recovery, and net severely discounted fees, plus a black eye and a low rate that we will certainly see cited in every contested fee battle for the next ten years. Whether or not the Court agrees with us on the money issues, the incentive for others to do these cases is seriously diminished by the tone of the Court's opinion. Whether or not we deserve any nice words for pursuing this case; we respectfully believe we do not deserve a black mark, either."

*Id.* at 4-5.

**Subsequent developments**

Plaintiffs filed their motion for reconsideration on April 11, 2008 and, in conformity with Local Rule 5.3(b), noticed the motion for presentment on April 17, 2008. Between those two dates, the Court reviewed the motion and began work on this decision, substantially completing it prior to the motion's presentment date. When plaintiffs' counsel appeared on April 17, however, they advised the Court that on the previous day, they had settled plaintiffs' attorney's fee claim with defendants, based on an agreement for prompt payment of a discounted amount (they did not disclose the amount of the discount). The Court inquired whether this rendered moot the motion for reconsideration. Plaintiffs' counsel expressed the view that the matter was not moot due to the adverse precedent allegedly created by the Court's ruling.

**Discussion**

**A.     Mootness**

Despite K&A's contentions, the underlying fee dispute is now moot as a result of the settlement of that dispute. The general rule is that a settlement renders moot any matters that were previously pending in the case. *See, e.g., Amer. Patriot Ins. Agy., Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004); *Ins. Co. of the West v. County of McHenry*, 328 F.3d 926, 927 (7th Cir. 2003). Sometimes – as happened earlier in this case – a settlement leaves open some issues, such as the availability of attorney's fees, but there is no indication that the parties' settlement of the fee dispute left any issues open.

The fact that the Court's ruling may be claimed to have a negative precedential effect vis-à-vis K&A does not prevent the fee dispute from becoming moot. *See Bd. of Educ. Of Oak Park & River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ.*, 79 F.3d 654, 659 (7th Cir. 1996) ("A desire for a favorable precedent will not prevent a case from becoming moot . . . ."). That said, K&A may have a "live" interest in clarification of certain aspects of the Court's ruling. For that reason, the Court will address K&A's contentions despite the fact that the underlying fee dispute is now moot.

**B.     The motion for reconsideration**

A motion for reconsideration is appropriate, generally speaking, only when the Court overlooked or misunderstood something; it is an inappropriate vehicle for asserting arguments that were not made by a party to which the arguments were then available. *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). With this standard in mind, the Court will address each of K&A's points in turn.

1. First, the Court respectfully disagrees with K&A's contention that the April 3 decision, either in substance or in "tone," "clearly impl[ies] deficiencies in . . . Ms. Dixon's work." Motion at 1. It is difficult for the Court to see how Mr. Krislov could make that claim, particularly when the Court said, in so many words, that it was not criticizing Ms. Dixon. The following statement appears in the Court's decision, after a discussion of the time claimed for Ms. Dixon's work in researching and preparing the complaint:

> The Court drafted plenty of complaints in its day and understands full well that it can take a significant period of time to research and draft a short, to-the-point complaint like this one. But that does not explain the fact that Ms. Dixon took over 100 hours to research and draft this particular complaint. The explanation is, in all likelihood, her relative inexperience at the time she drafted the complaint (*the Court hastens to add that it is saying this not as a criticism of Ms. Dixon, but rather simply to note what appears to be obvious*).

*Pasternak v. Radek*, No. 07 C 2858, slip op. at 17 (N.D. Ill. Apr. 3, 2008) (emphasis added).

To say once again what the Court believes it made clear in the April 3 decision: *the Court was not and is not suggesting that Ms. Dixon's work was deficient*. Rather, it was saying only that based on the explanation given by K&A in the fee petition, it appeared fairly clear that she had been, relatively speaking, inefficient. Saying a third-year associate was relatively inefficient (as compared with more experienced lawyers) is not a criticism; it is a truism.

If any criticism was implied or intended in the Court's ruling, it concerned the fee petition itself, not of the underlying work done on the case. As the Court stated in the sentence immediately following the passage quoted above: "plaintiffs have made no effort to justify the very large amount of time spent researching and preparing the complaint even after defendants specifically attacked the reasonableness of that time in their response to the fee petition." *Pasternak*, slip op. at 17-18 (footnote omitted). In light of plaintiffs' failure to justify the attorney time spent, the Court was likewise, and reasonably, critical of the absence of "billing judgment" reflected by K&A's request to recover for all of the 106 hours Ms. Dixon spent researching and

7

preparing the complaint. *Id.* at 18. But that, quite clearly, was not a criticism of Ms. Dixon, who as second-chair on the case did not have responsibility for exercising billing judgment.

2. The Court acknowledges K&A's explanation for why it took on the case despite the relatively modest amount of damages claimed. The Court also acknowledges that it did not expressly take into account, in determining the ultimate fee award, the claimed "undesirability" of the case – a matter to which the Court will return later in this opinion.

It is worth noting that certain contentions defendants made in denying liability were utterly without merit, as far as the Court could tell. Defendants contended they had paid far more to the insurer during the year in question, 2005, than they had withheld from the employees' paychecks – plainly attempting by this to suggest that they thought they had covered the insurance premiums that were due. But the evidence appears to have been rather clear that the amounts the Radeks paid during 2005 were actually for amounts due for 2004 and that no reasonable claim to the contrary could be made. Defendants also contended they could not have anticipated the collapse of Ready Metal, but that has nothing to do with whether they had complied with their promise and obligation to pay the insurance premiums when and as they came due. Finally, defendants' contention that they could not have anticipated the cancellation of the employees' insurance coverage seems to have been entirely lacking in merit – as it appears relatively clear that they knew the insurance premiums were not being paid.

All of that said, however, the culpability of the defendants is not a factor considered in determining the amount of attorney's fees to award (and plaintiffs neither cited it nor argued it as such in their fee petition, *see* Fee Pet. at 11-14). Rather, it is a factor appropriately considered in determining the entitlement to fees in the first instance, which is the way plaintiffs argued it, *see id.* at 10-11, and the way the Court dealt with it in the April 3 decision. *See Pasternak*, slip op. at 5-6.

3.  K&A's third point is that though the Court was "less than charitable" with Ms. Dixon, she devoted "exhaustive time" to the case prior to the filing of the complaint; in the motion for reconsideration, K&A now seeks to justify the time she spent. The Court has already dealt with the contention that it was "less than charitable" in tone and substance with Ms. Dixon. Motion at 3. Just to underscore the point, however, the Court makes it again: *the Court neither intended nor expressed criticism of the quality of Ms. Dixon's work*, and its comments about the amount of time she spent were *expressly* linked not to any lack of skill but only to her relative lack of experience as a third-year associate. Again, any criticism the Court expressed quite plainly was aimed at the absence of justification in the fee petition, not at the quality of Ms. Dixon's work.

In the motion for reconsideration, K&A seeks, for the first time, to explain and justify the 106 hours Ms. Dixon spent researching and preparing what the Court concluded was a relatively straightforward complaint. Respectfully, this justification comes far too late. The purpose of a motion for reconsideration is to point out matters the Court overlooked or misunderstood, not to fill in gaps in a party's original arguments. *See, e.g., FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986). K&A did nothing in its fee petition or supporting materials to show that the amount of time spent researching and preparing the complaint was reasonable – a burden K&A bore under *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Indeed, the petition did not even total the amount of time spent in that regard, and K&A presented the fee records in a way that left it first to defendants and then to the Court to figure it out. In explaining what was done prior to filing the complaint, K&A said only that after interviewing its prospective clients and deciding to take on the case, it negotiated with the assignee of Ready Metal's assets and when this proved unsuccessful "began work on an ERISA breach of fiduciary duty claim." Fee Pet. at 4-5. In the section of the fee petition devoted to justifying the fee award, the entirety of the discussion about the reasonableness of the time (as distinguished from the reasonableness of

the claimed hourly rates) was the following: "Here, the results have been excellent, on a case that has been leanly lawyered, with no more than one partner and one associate level attorney on any matter, some just one or the other." *Id.* at 13-14.

Perhaps a straight-faced argument could be made that there was no need in the petition itself to justify the time spent – though the Court doubts it, given the burden squarely placed on the petitioning party by *Hensley*.[1] But it should have been clear that after defendants directly attacked, in their response to the fee petition, the reasonableness of the time claimed for researching and preparing the complaint, *see* Resp. at 10-11, it was incumbent on plaintiffs to provide a justification in their reply brief. Despite this, they did not do so. The Court quoted in its April 3 ruling the totality of plaintiffs' justification:

> Defendants complain about the time spent and claim that there was no basis for a fiduciary breach claim, then assert that it was simple. No expert. No analysis of the complaint. No analysis of the research. Just Defendants' assertion that Ms. Dixon took too many hours to research and draft the complaint.

*Pasternak*, slip op. at 18 n.4 (quoting Reply at 8). The Court characterized this as a "back-of-the-hand response," *id.*, a statement that the Court acknowledges was critical of K&A's work on the fee petition. But though that characterization was somewhat pejorative, it was accurate. K&A bore the burden of justifying the reasonableness of the time spent; that time was directly attacked by defendants in a particularized way, focusing on the time spent before filing suit; yet K&A's reply was not a justification but an attempt to shift the burden of proof to the defendants. Had K&A provided an explanation in its opening brief or its reply of why over 100 hours was reasonably necessary, it might have been able to justify recovery for all, or at least more, of that time. But it did not do so. Even had the underlying fee dispute not been rendered moot by settlement, the deficiency in K&A's submissions could not appropriately be cleared up via a motion for reconsideration.

---

[1] Indeed, any such contention would be doubly hard to swallow, given K&A's acknowledgment in the fee petition itself that defendants had been contesting the reasonableness of the fee amount claimed from a very early stage of the litigation. *See* Fee Pet. at 5-6.

For these reasons, the Court respectfully disagrees with K&A's contention that the Court used "negative tones regarding Ms. Dixon's work," Motion at 3, and it rejects K&A's implicit request to buttress, via a motion for reconsideration, its showing on the reasonableness issue.

4. The Court will also provide further clarification of its decision not to adopt the hourly rates K&A proposed. K&A bore the burden of establishing the market rate for its services. *See, e.g., Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). It did not carry that burden. As the Court explained in its April 3 ruling, K&A cited nothing in support of its claimed hourly rates other than an article from a legal newspaper and an affidavit from a local attorney, experienced in ERISA cases, who stated, in a conclusory fashion without any supporting evidence or facts, that he considered K&A's proposed rates reasonable. The Court explained why it did not consider these items sufficient to sustain K&A's burden. *Pasternak*, slip op. at 11-13. The Court also noted that K&A had submitted no information regarding hourly rates it had been awarded in cases in which its fees were contested. *Id.* at 10.

K&A makes three particularized contentions on this issue in its motion for reconsideration. First, K&A says that "[w]hile it is true that our contested fee decisions are few, the cited uncontested fee decisions in which fees were approved based on our listed billing rates were nonetheless decisions by a Court similarly scrutinizing the time spent, the rates, and the results obtained." Motion at 4. The problem with this argument is that is misses the point: in its fee petition, K&A cited *no* hourly rates – contested or otherwise – that it had been awarded in other litigation. The K&A firm resume, which was attached to the fee petition as an exhibit, simply summarized cases the firm it had been involved in; it said nothing about any hourly rates it had been awarded. The Court has once again carefully reviewed K&A's materials submitted in connection with the fee petition and has found nothing that mentions an hourly rate that the firm was awarded in other litigation. Indeed, as the Court noted in its April 3 ruling, the only way the Court learned about a prior fee award in a case involving K&A was by doing its own

11

research – an award that (as the Court explained in the April 3 decision) did not support the hourly rates K&A sought in the present case. *See Pasternak*, slip op. at 10-11. The Court also notes that not even in its motion for reconsideration did K&A submit any prior awards, contested or uncontested, that support the hourly rates it proposed. Again, plaintiffs bore the burden of persuasion on this point, and they did not carry it. If, as Mr. Krislov says in the motion for reconsideration, the lower hourly rate the Court approved has given the firm "a black eye," Motion at 5, the bruise was self-inflicted.

Second, K&A disputes the Court's determination that the survey K&A cited (which sampled ranges of hourly rates charged by partners at several large Chicago law firms) was unhelpful in determining the market rate for the K&A attorneys' services. *Pasternak*, slip op. at 12-13. The Court explained why it reached that conclusion and can say it no better now:

> The survey is unhelpful because it gives the Court no point of comparison for attorneys with Mr. Krislov's experience level; it is not limited to attorneys who handle litigation; and it does not focus on attorneys who handle employee benefits litigation or other litigation of the type that K&A handles."

*Id.* at 13. In other words, plaintiffs did not give the Court any basis to determine whether the survey said anything pertinent to determining the market rate for K&A's work, and if so, what that was. And even were it proper to fill that particular gap in the fee petition via a motion for reconsideration, K&A has not done so – it says only, in conclusory fashion without supporting evidence, that Mr. Krislov's proposed $600 hourly rate is commensurate with that charged (or at least sought) by attorneys in large law firms. Motion at 4. This unsupported statement would be insufficient to carry K&A's burden of proving the market rate for its services even were it appropriate for the Court to consider the new contentions made in the motion for reconsideration.

Third, K&A argues that in setting the hourly rates, the Court gave no consideration to the successful result the firm obtained for its client in the case. That is true, but the reason is that

plaintiffs failed to make the case that their hourly rates should be enhanced based on the successful outcome of the case. Plaintiffs did achieve, via settlement, what now appears to be payment in full of the medical claims that they contended should have been covered by the Ready Metal insurance plan. In other words, their success was notable, and it came at an early stage of the litigation (though not without assistance by the Magistrate Judge and this Court acting as mediators). But the amount of their recovery is not 100 cents on the dollar of their original damage claim or settlement demand; rather, it became apparent during the negotiation process that some of the amounts plaintiffs had claimed would not have been covered even had Ready Metal and the Radeks lived up to their obligations to pay the health insurer. Nor did plaintiffs make the case that K&A had worked with an unusually high degree of efficiency which, when compared with the hourly rate the evidence supported, justified an enhancement of that rate.

Finally, K&A protests that the Court has approved "a low rate that we will certainly see cited in every contested fee battle for the next ten years." Perhaps so. That prospect, however, ought to have served as an incentive for K&A to provide evidence supporting the rates it claimed, beyond the single conclusory and unsupported affidavit that it submitted and the article that it simply attached to its papers without trying to show how K&A's proposed rates fit into the ranges the article disclosed. The Court notes, however, that K&A's failure to support the $600 / $350 hourly rates it sought in this case does not in any way preclude the firm from trying to prove in future cases that those are the appropriate rates. In other words, the Court's determination was made on the record presented; K&A is entitled to try to make a different, and better, record in future cases.

5. The Court agrees with K&A's contention that in determining the overall fee, the Court gave no indication that it had considered the results K&A obtained for plaintiffs. *See*

13

Motion at 4. Because the Court did not expressly take that issue into account, it will address the point now.

In the fee petition, plaintiffs cited the multiple factors used to determine whether to adjust upward or downward the "lodestar" amount determined after ascertaining the appropriate hourly rate and time spent, including "the amount involved and the results obtained" and "the 'undesirability' of the case." Fee Pet. at 12 (quoting *Clarke v. Ford Motor Co.*, 2006 WL 752902, at *6 (E.D. Wis. 2006), in turn citing *Hensley*, 461 U.S. at 430 n.3). Plaintiffs then argued as follows:

> Here, the most salient features are the time, labor and skill required, and the experience, reputation and ability of the attorneys (all of which we regard as included in our lodestar rates), the results obtained (a full recovery for Plaintiffs), and the "undesirability" of the case (ERISA claims have been difficult to justify pursuing).

*Id.* In short, plaintiffs made specific reference to the result they obtained and the "undesirability" of ERISA cases of this type.

The difficulty with plaintiffs' argument is that since *Hensley*, the Supreme Court has backed away from its apparent approval of success-based and risk-based adjustments to the "lodestar" figure. In *Blum v. Stenson*, 465 U.S. 886 (1984), the Court concluded that "[b]ecause acknowledgment of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award." *Id.* at 900. The "other factors" to which the Court appears to have referred concern the appropriate hourly rate. *See id.* at 899-900. In the present case, however, the Court determined (as discussed earlier) that K&A failed to make the case for an adjustment to its hourly rate based on the degree of success. In any event, in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986), the Supreme Court made it clear that factors such as counsel's skill and experience, quality of representation, and results obtained "are presumably fully reflected in the lodestar amount, and thus cannot serve as

14

independent bases for increasing the basic fee award," except in rare and exceptional cases supported by specific evidence. *Id.* at 565. And finally, in *City of Burlington v. Dague*, 505 U.S. 557 (1992), the Court sounded the death knell (at least in federal statutory fee award cases like this one) to enhancements of the lodestar figure based on risk of loss – which is, at least roughly speaking, another way of describing the "undesirability" of a case. *Id.* at 563-66.

K&A presumably would contend that the Court did not take the degree of success into account in determining the appropriate hourly rates and thus that the assumption underlying *Blum*, *Delaware Valley*, and *Dague* does not apply in this case. But as the Court made clear earlier in this decision, plaintiffs and K&A failed to make the case for an enhancement to their hourly rates based on their degree of success. Given that backdrop, the Court has no basis to conclude that this is one of the "exceptional cases" referenced in *Delaware Valley*.

## Conclusion

For the reasons stated above, the Court denies plaintiffs' motion for reconsideration [docket no. 42].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 24, 2008

15